**Raymond John WAGNER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22112.**

United States Court of Appeals
Ninth Circuit.

Nov. 19, 1969.

Barnes, Circuit Judge, dissented.

Raymond John Wagner, in pro. per.

Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Ronald S. Morrow, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

On February 14, 1957, Wagner was adjudged guilty of violating 18 U.S.C. § 2114. He and two others were found to have held up and robbed two postal officials in a car carrying postal funds to a bank. A possible eye witness was a man in a "7-Up" truck nearby, who gave one of the victims the license number of the get-away car. The government declined to give the name and address of this witness to Wagner before trial. On appeal, we held that this was not error, and affirmed. Wagner v. United States, 9 Cir., 1959, 264 F.2d 524.

On October 25, 1965, Wagner filed a motion under 28 U.S.C. § 2255. The trial judge denied it, without hearing, on November 2, 1965. On December 20, 1965, Wagner filed a motion for reconsideration in which, for the first time, he alleged that there had been "illegal suppression of evidence favorable to his defense by the government." The motion was denied. On appeal, we affirmed the November 2 order, and declined to consider the motion for reconsideration, saying:

"There cannot be 'reconsideration' of an issue which has not previously been considered. If appellant, as he now contends that he intended to do, desired to make a contention not previously advanced, he should have done so by a separate motion, and not by one which, by its definition, embraced contentions already advanced and correctly rejected."

Wagner v. United States, 9 Cir., 1967, 374 F.2d 86, 87.

In response to our views, Wagner filed a new § 2255 motion on March 29, 1967. To the moving papers was attached an affidavit containing the allegations quoted in the margin.[1] The

1. "That in February, 1961, he saw documentary proof that the Government had willfully and knowingly suppressed evidence which was favorable to his defense and which was material as a means of proving affiant's innocents [sic] ;

"That in the early part of 1965, affiant spoke with a person who had full knowledge of the suppression on the part of the Government relative to an eye-witness to the alleged offense for which affiant presently stands convicted;

"That the testimony of this eye-witness would have cast a cloud upon the Government's case against affiant, as the testimony was most favorable to affiant's defense;

"That this eye-witness was, prior to affiant's trial, intensely interrogated by all the interested government authorities on numerous occasions;

"That at the conclusion of the numerous interrogations by the Government, this eye-witness was instructed to give no

deposition to anyone; to stay away from the court during the trial as he would most likely would [sic] not be called as a witness; that he was to discuss the case with no one; that should anyone question him concerning the robbery he was to call the police; that should anyone attempt to question him concerning his testimony he was to inform him that he was a government witness; that he was to inform no one that he could not identify affiant as one of the men he saw commit the alleged robbery, and that if anyone questioned him concerning the robbery he should get in touch with the United States Attorney immediately;

"That this eye-witness was intimadated [sic] by government authorities as late as 1959 relative to him telling anyone that affiant was not the person whom he saw commit the alleged robbery;

"That this eye-witness has discussed the foregoing freely with other individuals and they stand willing to testify as to

trial court, without a hearing, dismissed the motion with leave to amend within 30 days. The material parts of the court's order are set out in the margin.[2] Wagner filed an amendment.[3] The court dismissed, by written order.[4] Wagner appeals. We reverse.

> the conversations related to them by this eye-witness pursuant to the alleged robbery;
>
> "That affiant is well aware of the seriousness of the foregoing allegations and stands ready to prove beyond all doubt that the United States Attorney, the Postal Inspectors, and other Government Agents interested in the prosecution of this case, suppressed the testimony of this eye-witness, as they then and there well knew that his testimony would be favorable to affiant's defense;
>
> \* \* \*."

2. "(3) petitioner states the bald conclusion that the Government suppressed evidence favorable to his defense at the time of trial, but he does not say what the evidence was, nor how it could have altered the result of the trial; he states that in February, 1961, he saw documentary proof that the Government had suppressed evidence, but he does not say what the document was, nor what the 'proof' was; he states that in the early part of 1965, he 'spoke with a person who had full knowledge of the suppression on the part of the Government relating to an eye-witness to the alleged offense', but he does not say who the person was to whom he spoke, nor the name of the eye-witness, nor does he state whether either is available, and, if so, where they can be reached with a subpoena;

> \* \* \* \* \*
>
> "IT IS ORDERED that the action is dismissed.
>
> "IT IS FURTHER ORDERED that if the petitioner be so advised he may file an amended petition alleging the factual matter referred to by the court in (3) supra."

3. The amendment states, in part:

> "(1) The evidence suppressed by the Government was the testimony of an eye-witness whose testimony would have tipped the scales in petitioner's favor as such testimony goes to the heart of the case, i. e., that no person or persons could have identified the robbers, as they were masked and wore hats during the entire course of the robbery.
>
> "(2) The parties with whom petitioner spoke relative to the suppression of the aforementioned testimony, who

*1. The contention was not previously advanced.*

 On appeal from his conviction, Wagner claimed only that the court should have required the government to disclose the name and address of the "7-Up" man. He made no such claim as is

> have full knowledge of said suppression are as follows: Wilbert St. Onge, Jr., 1727 13th Avenue, Seattle, Washington; Charles L. York, Post Office Box 1000, Leavenworth, Kansas, and the eye-witness to the robbery.
>
> "(3) It is the position of petitioner that a disclosure of the name of the eye-witness would place petitioner in the position of allowing the government to exercise the same kind of suppression outlined in the affidavit appended to petitioner's motion presently on file with this Court, pursuant to Section 2255 of Title 18 [28], U.S.C."

4. The order recites:

> "(4) the petitioner has now filed an amended petition but he still does not allege any facts, and states as his reason that he does not wish to disclose the name of the eye-witness because the Government would 'exercise the same kind of suppression.';
>
> "(5) it is quite obvious that the matter alluded to in the plaintiff's petition does not refer to a contention not previously advanced, but relates to the driver of a Seven-Up truck referred to in the original trial and on appeal where the Court of Appeals held that the Government did not suppress the name and address of the Seven-Up truck driver and states, 'Where a witness is equally available to both parties no inference should be drawn from the failure to produce such a witness.' Wagner v. United States, 264 F.2d 524, 531.
>
> "(6) the petitioner states that he spoke to one of his fellow inmates relative to the suppression of the testimony of the eye-witness, and wishes to bring his fellow inmate to Southern California with him for a hearing before this court.
>
> "(7) such vague and conclusory allegations do not require the court to bring the petitioner and his fellow prisoner 1500 miles for an evidentiary hearing (Sanders v. United States, 373 U.S. 1, 19 [83 S.Ct. 1068]; Wilkins v. United States [103 U.S.App.D.C. 322] 258 F.2d 416), and the files and records of the case conclusively show that the petitioner is entitled to no relief."

now advanced. It is one thing to say that the government need not, before trial, give the defendant the name and address of an eye-witness to the offense. It is quite another to say that the government, knowing that a witness' testimony may help the defense, can tell the witness not to tell anyone what he knows, and to stay away from court. *See* Lee v. United States, 9 Cir., 1968, 388 F.2d 737. *Compare* Velarde-Villarreal v. United States, 9 Cir., 1965, 354 F.2d 9. There has been no decision on the merits of this "ground" for relief. *Cf.* Sanders v. United States, 1963, 373 U.S. 1, 16, 19–20, 83 S.Ct. 1068, 10 L. Ed.2d 148; Gomez v. United states, 9 Cir. 1968, 396 F.2d 323, 326.

2. *The factual allegations were sufficient.*

■ The case turned primarily upon identification. One government witness testified that Wagner did not have a mask on, another that Wagner's mask had slipped down. If the "7-Up" man's story was that he could not identify Wagner (see note 1), and that both men, Wagner and co-defendant, wore masks during the entire course of the robbery (see note 3), it would have been very helpful to Wagner. As it was, it took two trials to convict, the first jury having been unable to reach a verdict. And if the U.S. Attorney and postal inspectors instructed the "7-Up" man to avoid giving statements or testimony in the case, as Wagner alleges that they did (see note 1), there was indeed suppression of evidence.

■ The rule that merely conclusionary statements in a § 2255 motion are not enough to require a hearing does not mean that the moving party must detail his evidence. It means only that he must make factual allegations, as Wagner has done. See Wilson v. Wilson, 9 Cir., 1967, 372 F.2d 211; Pembrook v. Wilson, 9 Cir., 1966, 370 F.2d 37. Compare Norris v. Wilson, 9 Cir., 1967, 378 F.2d 324.

■■ What we have said does not mean that the trial court must immediately order a hearing. It may require the government to file a reply, permit the government to direct interrogatories to Wagner, impose sanctions if Wagner declines to answer, provide for deposing the witnesses named by Wagner, including the "7-Up" man, and take such other pre-hearing steps as may be appropriate. In the particular circumstances of this case, we believe that Wagner should be represented by counsel, and the court may, of course, appoint such counsel even though there is now no authorization for his compensation in a civil proceeding such as this. It can then decide whether a hearing in open court is required.

3. *The judge was not disqualified.*

■ Wagner claims that the trial judge was disqualified because he had tried the case and also passed on the first § 2255 motion. The rule in this circuit is to the contrary. King v. United States, 9 Cir., 1968, 402 F.2d 58, 60; Dukes v. United States, 9 Cir., 1969, 407 F.2d 863.

The order appealed from is reversed; the matter is remanded to the trial court for further proceedings consistent with this opinion.

BARNES, Circuit Judge (dissenting):

I dissent. This petitioner has been before this court twice before. Wagner v. United States, 264 F.2d 524 (1959). The denial of his earlier § 2255 petition was affirmed. Wagner v. United States, 374 F.2d 86 (9th Cir. 1967).

In Wagner's appeal from his conviction, one of the grounds claimed for reversal was that the trial court erred in not directing the Government to give Wagner the name and address of a Seven-up truck driver. *Cf. Wagner, supra,* 264 F.2d 524 at 537. With the long transcript of the trial available to our reviewing panel, this issue was considered and determined adversely to appellant.

On February 6, 1967, a panel of this court (Judges Barnes, Ely and Peckham, the latter sitting by assignment, with Judge Ely writing the per curiam opinion) affirmed a denial of relief under § 2255, saying the same three errors urged in the petition "had been rejected by our court on the direct appeal from the judgment of conviction."

Appellant then filed a second § 2255 petition which did not raise the same three questions by use of the same language utilized on his first *motion*, but which did, in my opinion, raise a precisely similar issue to that raised on the direct appeal, *i. e.*, the testimony of the Seven-up driver.

In disposing of that same issue, the panel on the original appeal (Judges Chambers, Barnes and Hamley, with Judge Hamley the author) stated as follows:

"Prior to the first trial appellant Wagner moved for a bill of particulars which would have supplied the names and addresses of persons present at the alleged robbery. It was later stipulated that this motion would also be deemed to be made in connection with the second trial. The motion was denied. During the course of the second trial there was testimony to the effect that at the time of the robbery a man was in a Seven-up truck nearby. The government did not give appellants the name and address of this truck driver. In view of these circumstances appellants argue under their sixth specification of error that the trial court erred in denying the motion for a bill of particulars.

"Bonner, one of the victims of the robbery, testified that a Seven-up truck was standing directly behind the robbers' Oldsmobile. After the robbery the driver of this truck gave Bonner the license number of the 'get-away' car written on an envelope or a piece of paper. Robert Hunt, another witness called by the government, saw the driver of the Seven-up truck take down the license number of the Oldsmobile. No other record references to the truck driver have been called to our attention.

"The record of this trial therefore hardly supports appellants' assertion that 'it is clear' that the name of the driver of the Seven-up truck was given to one of the government witnesses and that his name and address were within the knowledge of the government. It is true that the government brief makes reference to this driver as a 'Mr. Hall.' This reference, however, is based on testimony taken at the first trial which is not in the record before us.

"If we do consider that testimony, however, it establishes that appellants could have obtained the information in question prior to the second trial [footnote omitted]. There is no contention that appellants made such an effort, or that if they did so without success the court was advised of that fact. Nor, even with the disclosure concerning the testimony at the first trial regarding a 'Mr. Hall,' is it established that the government had the address of the driver of the Seven-up truck.

"Where a witness is equally available to both parties no inference should be drawn from the failure to produce such a witness. Shurman v. United States, 5 Cir., 233 F.2d 272, 275. On like reasoning, where the name and address of a witness is equally available to both parties, no prejudice results from the denial of a motion requiring one party to supply that information to the other [footnote omitted]." 264 F.2d at 531.

The majority of this panel now reverse the trial judge on the claim the Seven-up driver's testimony was suppressed; despite the vague, uncertain and conclusionary nature of a petition that does not relate a single circumstance that establishes any suppression; is not supported by any affidavits made by any witness as to what they could or would testify to; and merely alleges, in purely conclusionary language of the pe-

titioner himself, without detailed description as to what, how, when or where:

(1) that he saw "documentary proof" in February 1961 (two years after his conviction was affirmed and five years *before* he filed his first § 2255 petition) that the Government had suppressed evidence favorable to him; and

(2) that in 1965 (while imprisoned) he spoke with "a person" who had full knowledge of the suppression.

Nowhere in the showing before the district judge was there any mention of any witness' name. Only in Appellant's Reply Brief before us (p. 3) does he actually state he refers to "the Seven-up truck driver" already mentioned in this court's opinion affirming conviction, and whom he could have subpoenaed at his trial had he desired.

The experienced district judge sitting on this second § 2255 petition stated in his order, among other things:

"(3) petitioner states the bald conclusion that the Government suppressed evidence favorable to his defense at the time of trial, but he does not say what the evidence was, nor how it could have altered the result of the trial; * * *." (R.T. pp. 26–27.)

However, the trial judge than "invited" the petitioner to file an amended petition, and then ruled:

"(2) on March 29, 1967, following the decision of the Circuit Court, petitioner filed another Section 2255 motion in which he stated the bald conclusion that the Government suppressed evidence favorable to his defense at the time of trial, and that he 'spoke with a person who had full knowledge of the suppression on the part of the Government relating to an eye-witness to the alleged offense';

"(3) the court dismissed the petition filed on March 29, 1967, but granted leave to the petitioner to file an amended petition and allege facts, if he wished to do so;

"(4) the petitioner has now filed an amended petition but he still does not allege any facts, and states as his reason that he does not wish to disclose the name of the eye-witness because the Government would 'exercise the same kind of suppression';

"(5) it is quite obvious that the matter alluded to in the plaintiff's petition does not refer to a contention not previously advanced, but relates to the driver of a Seven-up truck referred to in the original trial and on appeal where the Court of Appeals held that the Government did not suppress the name and address of the Seven-up truck driver and states, 'Where a witness is equally available to both parties no inference should be drawn from the failure to produce such a witness'. Wagner v. United States, 264 F.2d 524, 531.

"(6) the petitioner states that he spoke to one of his fellow inmates relative to the suppression of the testimony of the eye-witness, and wishes to bring his fellow inmate to Southern California with him for a hearing before this court;

"(7) such vague and conclusory allegations do not require the court to bring the petitioner and his fellow prisoner 1500 miles for an evidentiary hearing (Sanders v. United States, 373 U.S. 1, 19 [83 S.Ct. 1068]; Wilkins v. United States [103 U.S.App.D.C. 322] 258 F.2d 416), and the files and records of the case conclusively show that the petitioner is entitled to no relief." (R.T. pp. 28–29.)

I think the district court judge was correct, and I would affirm. The purported "evidence" that petitioner relies upon is *his conclusion* "that no person or persons could have identified the robbers, as they were masked and wore hats during the entire course of the robbery." That was not the testimony at the trial. As the majority opinion points out, one witness testified Wagner's mask had slipped down.

How would the majority suggest what evidence could be offered and introduced to prove that "no person or persons could have identified the robbers"? Could any witness express such an opinion?

It is my belief that the majority holding is an example of how appellate judges tend to substitute their judgment on evanescent possibilities for the considered judgment of other judges, both trial and appellate.

If the district court's fact finding process is to retain any integrity or uniformity, it must be respected by appellate courts. Its conclusions should not, in my opinion, be overturned on a showing such as has here been made.